# MISSISSIPPI STATE CASES.

THE STATE *v.* BLENNERHASSETT, et al., Walk. Miss. Rep., 7.

### ASSAULT AND BATTERY.

A prosecutor in an indictment for an assault and battery, with intent to murder, who has commenced a civil suit for the injury, will not be compelled to elect or abandon the civil suit, or the prosecution; but both may be sustained, the first for damages to the injured individual, the second to avenge the public wrong.

A prosecutor in an indictment is a competent witness for the state upon the trial, though liable for costs if the prosecution be frivolous or malicious.

Defendants separately indicted for the same assault and battery, may be tried jointly, although they may have claimed the right to be tried separately.[1]

Where two defendants are tried together on indictments for the same assault and battery, one of the defendants is not a good witness for the other upon the trial, unless no proof of guilt is offered against the defendant proposed as a witness.[2]

The voluntary withdrawal, during the trial, of a witness subpœnaed, but not examined on behalf of the state, is not sufficient ground to grant a new trial, especially where his testimony is not shown to be material for the defendant.

Where the jury assess a fine, the court will not grant a new trial, unless the amount of the fine is so excessive as to evince partiality or corruption in the jury.

THE defendants were separately indicted, at the March term, 1818, of the Claiborne Superior Court, for an assault and battery, with an intent to murder one John Hays, on the 4th of February, 1818. In each indictment there was also a separate and distinct count for a simple assault and battery. Upon the affidavit of the defendants that they did not believe they could have a fair and impartial trial in Claiborne county, by the reason

[1] 1 Term Rep., 163; 5 Johns., 256; 1 ib., 490; 4 Term, 17.      [2] 4 Johns., 296.

of the exertions of John Hays, the prosecutor, to influence and excite the public mind against them, of the prejudices of many men of weight and influence, and of the malice and ill-will of the sheriff of the county against the defendants, the indictments were transferred to Jefferson county, to be tried by a jury of that county. The defendants were tried jointly upon their several pleas of not guilty, although they claimed the right to be tried separately; and were both found guilty by the jury, and a fine of eight hundred dollars assessed against Harman Blennerhassett and of two hundred dollars against Dominic. The defendants moved the court for a new trial, and assigned the following reasons, viz:

1. Because the court ruled the said defendants into a trial of the indictments found against them in the above cases, without compelling the prosecutor, John Hays, who had instituted a civil suit for damages for the same assault and battery, to make his election either to proceed in the civil or criminal cases, but not in both, though an application to that effect was made by defendants' counsel and overruled by the court.

2. Because the court admitted the said John Hays, who is indorsed on the indictments as the prosecutor, and who may be liable for the costs, to be sworn and examined as a witness upon the trial of said indictments, though the counsel for the defendants took and urged an exception against his competency.

3. Because the court ruled the said defendants to be tried jointly and by the same jury, though the indictments were several, and though they claimed and urged by their counsel a right to be tried separately on the several indictments against them.

4. Because the court refused to permit the said Dominic Blennerhassett to be examined as a witness on behalf of the said Harman Blennerhassett who produced the said witness and claimed that he should be examined on his behalf.

5. Because the defendants were surprised at the trial by the absence of Thomas Rogers, a witness summoned on behalf of the state, who was material for them, and who, they believe, was procured to absent himself by the malpractice of the prosecutor, John Hays.

6. The verdict was contrary to law and the evidence.

This motion for a new trial was, by the Superior Court of Claiborne county, referred to the Supreme Court for their decision.

*Reed*, for the defendant.

It is not denied, that an individual who has sustained an injury, such as the prosecutor in this case is alleged to have received, has a right to call in the public arm to avenge his wrongs; but he ought not to be permitted, at the same time, to pursue the defendant by a civil suit, to recover damages for the same injury. Neither reason, policy, nor authority will sanction such a proceeding. If an individual be permitted to carry on a public prosecution and a civil suit, against the same defendant for the same offense, and be also permitted to testify in behalf of the state in the public prosecution, will not the testimony which he shall then give, disguised and disfigured by his real or imaginary sense of injury, have a tendency to operate greatly to the prejudice of the defendants on the trial of the civil suit? If the court tolerate a proceeding of this kind, they will afford but too much scope and too much encouragement for the exercise of malignant and vindictive passions. No man ought to be twice punished for the same offense; and although it may be said that the fine in the public prosecution is a punishment for a breach of the peace, and for the violation of the majesty of the laws, and that the verdict in the civil suit is a remuneration to the prosecutor for the injury which he has sustained; yet, both are in fact punishments upon the defendant, and he has in truth committed but one offense. The case of Rex v. Fielding, 2 Bur., 719–20, goes strongly to support the doctrine contended for. The court refused to grant an information against the defendant, a justice of the peace, for malpractice in office, until the prosecutor would discontinue a civil suit which he had instituted for the same offense. And the court then observe, that if the prosecution had been commenced in a manner strictly legal, by indictment, the attorney general would, and ought, to enter a *nolle prosequi* upon the indictment, unless the prosecutor would enter a discontinuance of the civil suit. In the case of State v. Blythe, 1 Bay, 166–7, the court declare it to be the set-

tled practice in South Carolina to compel the prosecutor to make his election. That was an assault and battery. In Rex v. Storrs, 3 Bur., 1702, the attorney general admits that it is the practice in assault and battery, etc., for the prosecutor to elect whether he will proceed by indictment or civil suit. In the case of the Territory of Mississippi v. Peper, Judge Simpson decided that the prosecutor must make his election. I think, therefore, that in our first point we are fortified both by reason and authority.

2. If the prosecutor were absolutely liable for costs upon failure of the prosecution, he would unquestionably be an incompetent witness. A liability to pay costs goes to the competency, and not to the credibility of a witness. Hence a *prochein ami*, by whom an infant sues, cannot be a witness for the infant, nor the bail for his principal, because, being liable for costs, he is interested. 2 Stra., 1026. He has a direct interest in the event of the suit. 1 Term R., 164; 2 Esp. N. P., 347, 703; 1 Bin., 444. By our statute, it is made the duty of the attorney general, to indorse the name of the prosecutor upon all bills of indictment; and if the government fails in the prosecution, and it appears to be frivolous or malicious, it is the duty of the court to render a judgment for costs against the prosecutor. Dig., 237. It is a general rule, that he who is to be the gainer or loser by the event of a suit cannot be a witness. 2 Haw., 610; 2 Hale, 279, 280; 1 Hale P. C., 302–3. And that which exempts a witness from a charge or loss which he may incur on the event of the suit, is as much an interest, as the prospect of positive advantage. 2 Esp. N. P., 347, 703. In this case the prosecutor may, upon a conviction of the defendant, avoid the payment of costs, which he might incur by failure of the prosecution; he is, therefore, directly interested, and his interest renders him an incompetent witness.

3. In this case the attorney general might have indicted the defendants jointly. Had he done so, the court, in their discretion, might, perhaps, have directed them to be tried together; but as he has caused several indictments to be found against them, they are entitled to separate trials. No case, it is believed, can be produced, in which two defendants who have been seve-

rally charged in distinct indictments, have been compelled, against their will and consent, to unite in their trial. By our constitution, every man accused of a crime or misdemeanor, is entitled to a speedy and public trial, by an impartial jury of his country. Although in this case, the right to challenge any number of jurors peremptorily does not exist, the offense not being capital, yet each defendant might challenge any number of jurors against whom he could show good cause of challenge. If one defendant show good cause of challenge against a juror, to whom the other defendant has no legal objection, and in whom he has the utmost confidence, what course would the court pursue? They must deprive one of the defendants of that fair and impartial trial secured to him by the constitution. If the challenge be disregarded, the challenger is tried by a juror who is not impartial; and if it be allowed, the other defendant is deprived of a juror in whose uprightness and integrity he has great confidence, and to whose services as a juror he had an unquestionable right from the moment that the name of the juror was entered on the panel, and he was called to be sworn. Where several individuals are indicted for a joint offense, either a joint or several *venire facias* issues, but it is not the preferable mode to issue a several one. 2 Hale P. C., 173, 263; 2 Haw., 407; Trials *Per Pais*, 46, 47. By ruling the defendants to be tried jointly, one defendant was deprived of the testimony of the other on his trial. If it can be shown, that one of these defendants would have been a competent witness for the other, if they had been tried separately, and that this right was denied them upon a joint trial, it would seem to follow as a legal deduction, that the court erred in compelling them to be tried together, and, therefore, a new trial ought to be granted.

4. No good reason can be assigned why an accomplice, who is indicted separately, shall not, before conviction, be a witness for his associate. He is not interested in the event of the trial; the judgment of acquittal or conviction of his associate could not be given in evidence for or against him on the trial, and he is not rendered infamous until after conviction. Why, then, should his testimony be rejected? His credibility may be impeached from the circumstances of his being an accomplice, but

his competency cannot be denied.    An accessory before or after the fact may be a witness, for or against the principal felon, unless tried with him by the same jury, which he is not bound to submit to, if they were indicted separately.    If three persons be separately indicted for perjury in swearing falsely to the execution of a bond, and one traverse the indictment and be put on his trial, the other two may be witnesses for him.    If two persons be severally indicted for the same assault and battery, they may be witnesses for each other.    Foster, 360; 2 Esp. N. P., 393, 726; 2 Hale P. C., 280; 2 Haw., 620; McNal., 204; Peake Ev., 144; 1 Term, 301; 1 Wash., 187.

5. It appears from the affidavit of the defendants that the testimony of Thomas Rogers was material for them, of which they were deprived without any fault in themselves.    Rogers had been summoned by the state, and had been attending during the trial, but left the court without the knowledge of defendants, before the testimony on behalf of the state was closed, and before the defendants could call upon him to testify.    The defendants knowing he had been summoned by the state, and seeing him in attendance upon the court during the trial, could not deem it necessary for them to summon, and were, therefore, taken by surprise when they discovered that he had left the court.    Surprise is a good ground for granting a new trial.    If the absence of Rogers was procured by the prosecutor, it is such a fraud upon the defendants that the court will grant a new trial.    6 Bac. Abr. 671–2.

6. If the court are satisfied that the verdict is against law or evidence, or that justice has not been done the defendants, they will not hesitate to grant a new trial.    1 Bur. 390; 3 Black. Com. 387.    If death in this case had ensued, the defendants would, at most, have been guilty of manslaughter only.    In that case the defendants could not have been mulct in a larger sum than five hundred dollars.    Dig. 244.    And the jury in this case having assessed a fine against Harman Blennerhassett of eight hundred dollars, affords very good reason for the conclusion, that the verdict is so unjust, and the fine so unreasonable, that the court willl grant a new trial.

*Harding*, attorney general.

1. It is important to every government that all breaches of its penal laws should be punished. It would be better not to enact laws, than to permit them, when enacted, to be violated with impunity. This is a much more penal offense than a simple assault and battery. It was attended with circumstances of peculiar aggravation and atrocity. The prosecutor was very severely wounded, and it was little less than a miracle that he escaped with his life. Can it be seriously contended that the government ought to wink at offenses of this kind, because the prosecutor is seeking a pecuniary remuneration for the atrocious injury which he has sustained? Should such be the decision of the court, there will be no longer any security for life or liberty; the government and laws will justly fall into contempt, and become a "laughing stock, and a bye-word among the people." The prosecution is not carried on for the benefit of the prosecutor alone; the whole community are deeply interested in it. It is important for them that offenders, like the present defendants, should be severely punished, that others of similar dispositions may be deterred from committing the like outrages. The prosecutor cannot be deprived of his action for damages. It is secured and guaranteed to him as well by the principles of eternal justice, as by the express provisions of the constitution. 3 Black. Com. 121; 4 ib. 156; 3 Bac. Ab. 156, Ass't and Bat. D.

The cases cited by the counsel for the defendants do not support the principles for which they contend. The case of Rex v. Fielding is very distinguishable from the present. That was an application to the court for leave to file an information against a magistrate, who had conducted illegally in the execution of his office. The court was satisfied that the magistrate had acted honestly, that no corrupt or evil intention could be imputed to him, that application was made by the prosecutor from malicious and vindictive motives, and, therefore, in the exercise of a just discretion, they rejected the application, until the prosecutor should discontinue a civil suit which he had instituted for the same misconduct or misdemeanor. There is no English case, where the prosecution was by indictment, in which the court have required the prosecutor to make his election. In some cases

of a trifling nature, or where the prosecutor appears to be instigated by malice, the attorney general will enter a *nolle prosequi*, unless the prosecutor will discontinue the civil suit. The case in Bay's Reports cannot be considered as entitled to much weight, when put in competition with several English cases, and a decision of the Supreme Court of Massachusetts expressly in point. 1 Bac. Abr. 245–6; 1 Bos. & Pul. 191; 2 Mass. R. 372.

2. It is generally true in criminal as well as civil cases, that a person who may gain or lose by the event of the suit cannot be admitted as a witness; but in robbery or larceny, where the prosecutor is entitled, upon conviction of the defendant, to a restitution of the goods stolen, and in cases where a reward is offered to the prosecutor, by statute, by proclamation, or by a private person, he is, notwithstanding, a good witness. Phil. Ev. 86, 91; 1 McNal. 61. It is not pretended, that the prosecutor in this case is interested in the event of the suit, except that he may be liable for costs, upon certain contingencies, if the state should not succeed in the prosecution. He is not entitled to any reward, in case the defendants shall be convicted, nor can the verdict and judgment be given in evidence for him in the civil suit. Should the state fail in the prosecution, he is not liable for costs unless, in the opinion of the court, the prosecution is frivolous or malicious. His liability then depends upon two contingencies, future and remote. This is not such a liability as will disqualify him from being a witness, or exclude his testimony. To render a witness incompetent, his interest must be legal and fixed, not depending on any contingency. Phil. Ev. 39; Salk. 283; 1 Term R. 163.

3, 4. All offenses are several as it respects the offenders. If two or more individuals are jointly concerned in the commission of the same offense, the attorney general may, at his pleasure, indict them jointly or separately. 2 Hale's P. C. 173; 2 Haw. 342. It is not denied by the counsel for the defendants, that they might have been tried together, if they had been jointly indicted. What good reason can be given, why two persons jointly indicted, may, in the discretion of the court, be tried together when, if they had been charged with the same offense,

in separate indictments, they must be separately tried. It is conceived there is none. It is not the circumstance of their being jointly indicted that authorizes the court to put them upon trial together; but that of their being jointly concerned in the commission of the offense. The evidence against the one, goes to disclose the guilt or innocence of the other. No injury can, therefore, result to either of the defendants from a joint trial. But it is said, that by denying the defendants a separate trial they are deprived of the testimony of each other. It is very clear that one defendant cannot be a witness for another, unless there is no evidence given against him; and in that case, when they are tried together, the court will send up an issue for the one against whom no evidence has been given, and upon the return of a verdict of acquittal, his testimony will be received on behalf of the other defendant. 1 McNal. 56; Phil. Ev. 74. Belmore's case is very distinguishable from the present. The perjury of one man is not that of another; and although they may have sworn falsely in regard to the same circumstance, they cannot be joined in the same indictment. As to the other principles relied on by the defendants' counsel on this point, they are the mere *dicta* of McNally and the American editor of Espinass' *Nisi Prius,* not supported by any adjudged cases.

5. It does not appear from the affidavit of defendants that the testimony of Rogers, if it could have been procured, would have been material for their defense. They swear that they could have proved by him, an offer of a compromise or reference with the prosecutor, prior to the assault for which they are indicted, and an assault upon them by the prosecutor, on the morning of the same day on which they committed the assault upon him. These facts, if true, would not be material for their defense, nor could they be legally given in evidence upon the trial; and if they could have been given in evidence, the verdict must have been the same. There is no evidence that the absence of Rogers was procured by the prosecutor, except the belief of the defendants; and the affidavit of Mills goes strongly to show the fallacy and improbability of that belief. The defendants did not summon Rogers; and if they relied upon him, they were guilty of *laches* in this respect. The attorney general is

not bound to keep, till the end of the trial, all the witnesses whom he may have summoned. He may dismiss them when he pleases, and the adverse party will have no cause of complaint.

6. The verdict is neither against the law nor the evidence. The assault was most atrocious and aggravated, and the jury showed their good sense by inflicting a heavy fine upon Harman Blennerhassett.

PER CURIAM :

1. The doctrine contended for by the defendants' counsel, that a prosecutor is bound to make his election, and cannot, at the same time, be the prosecutor in an indictment, and the plaintiff in a civil suit, for the same assault and battery, is not recognized by the court. The prosecution is not carried on for the benefit of the prosecutor only ; the whole community is interested in the execution of the criminal laws. Any individual may become the prosecutor in an indictment as well as the injured party. The object of public prosecution is to give force and vigor to the laws, by showing the community that they cannot be violated with impunity ; to reclaim the offender, if possible, by the salutary restraint of punishment, and to secure and protect all the citizens in the enjoyment of their rights and privileges, by deterring the wicked and abandoned, through the fear of punishment, from the perpetration of similar offenses. The public, therefore, cannot be deprived of their right to prosecute for every violation of the penal or criminal laws. Nor can we refuse to the injured individual a remedy for the wrongs which he has received. The government guarantees to all its citizens, security in their lives, liberty and property. If either of these essential rights is violated, the suffering party has a right to call upon the courts of justice to aid him in obtaining remuneration for the injury which he has received. If a public prosecution and a civil suit could not be carried on at the same time, for the same offense, it would be in the power of the injured party to compound any offense. This the law does not authorize.

The only case in point cited by the defendants' counsel is

from Bay's reports.   Although that case may be considered of binding authority in South Carolina, yet we do not think it has sufficient weight to overrule or even to counterbalance the cases referred to by counsel for the prosecution, so that upon the score of both reason and authority, we feel ourselves bound to overrule the first reason for a new trial.

2. It is a general rule, that when a person is to be a gainer or loser by the event of a suit, he is not an incompetent witness. But in many cases in criminal prosecutions, an individual is admitted as a witness, although he may be a gainer by the conviction of the defendant, as in robbery, burglary, and larceny, where, upon conviction, there is a restitution of the goods stolen, and in all cases where a reward is given to the informer or prosecutor, upon conviction, whether given by statute, proclamation, or by a private person.   In all these cases, and in many others, where the witness may seem to have an interest in the conviction of the defendant, he is, nevertheless, admitted, and his credibility is left to the jury.   The courts in modern times, are much more liberal in the admission of witnesses, than they were a century ago.   Nothing now renders a witness incompetent but the infamy of his character, or an absolute and direct interest in the event of the suit, or, unless the verdict and judgment in the suit in which he is to testify, can be given in evidence for or against him, in some future trial.   The interest of the witness, to exclude his testimony, must be legal and fixed, absolute and direct, not remote and indeterminate, nor depending upon a contingency.   Phil. 39; N. Y. Term R. 271.   Thus a surety in an administration bond, is a good witness for the administrator in a suit brought against him as such.   Term R. 163.   A deputy sheriff who has taken a prison, bounds bond, is a competent witness for the sheriff in a suit brought against him for an escape.   5 Johns. 256.   A person liable to be assessed in the poor rates, may be a witness in settlement cases.   1 Johns. 490 ; 4 Term 17.   So an agent is a witness, though he may by possibility gain or lose by the event of the suit.   In these and many other cases, where the liability of the witness is remote or contingent, he is uniformly admitted, and this possibility of interest is considered as going to his credibility, not to his competency.

What interest has the prosecutor in this case? He may be obliged to pay costs if the prosecution fail, and appear to be frivolous or malicious. This liability is too remote, and depends upon too many contingencies, to render him an incompetent witness.

3. On the third point, the court had at first some doubts, but upon reflection, and an examination of the authorities, those doubts were removed. It is very clear that when two or more persons are guilty of the same offense, they may be indicted jointly, and when jointly indicted, may be tried together, although they sever in pleading, unless the court, in their discretion, direct them to be tried separately. The only good reason why two or more, joined in the same indictment, may be tried together, is conceived to be, that their offense is the same, committed at the same time, and the evidence against the one, is equally applicable to the other. These reasons apply equally to several indictments, where the offense is the same, and committed at the same time. Two persons whose offense is not precisely the same, as a principal and accessory, may be tried together, if they are indicted jointly; and it is conceived, that there are stronger reasons for trying two persons together who are guilty of precisely the same offense, although they may be severally indicted. The court have the power in either case to direct a separate trial when the circumstances require it, or injustice would otherwise be done. In this case such necessity does not seem to exist. The defendant cannot, as a matter of right, claim a separate trial, unless, from the nature of the offense, they are entitled to peremptory challenges. 4 Johns. 296, etc. But it is said, that it puts it in the power of the attorney general, to deprive a party of his witnesses. He could as easily do this by indicting them jointly. It is the circumstance of both defendants being indicted for the same offense that excludes the one from giving testimony for the other. It makes no difference, in that respect, whether they are indicted jointly or severally. No inconvenience can, on that account, result to them from a joint trial; for if no evidence be given against the one, the court may direct the jury to inquire first as to him, and upon his acquittal, he may be received as a witness for the other.

The arguments and authorities on this point apply equally to the fourth reason assigned for a new trial.

5. As to the ground of surprise urged by the defendants' counsel, the court do not think it tenable. It is not shown by the defendants' affidavit, that the testimony of Rogers would have been material, and if they considered it so, it was their duty to have summoned him.

There is no evidence that the absence of Rogers was procured by the prosecutor, or by any one concerned in the prosecution, and the affidavit of Mills affords strong reason to believe that it was not the case, but that Rogers withdrew without the knowledge of the prosecutor or of the attorney general.

It is said that the fine against Harman Blennerhassett is excessive. It is the duty of the jury to assess the fine according to the nature and aggravation of the offense. The court will not in such a case interfere and grant a new trial, unless the fine is so excessive as to evince partiality or corruption of the jury. The evidence in this case proves that the offense was highly atrocious and aggravated. The circumstances attending the assault, and the weapons used, leave no doubt of the intention of the defendants. It must ever be a consolation to them, that that intention was not carried into effect. The court do not think the fine so excessive as to demand their interference.

Motion for a new trial overruled and judgment to be executed in Claiborne county. *Turner*, *Reed* and *Davis* for defendants, —Attorney General, *Harding* and *Rankin* for State.